UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FEDERICO VASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>CONNIE GIPSON, Warden,<br><br>Respondent. | No. 2:14-CV-0322 AC<br><br><br><br>ORDER |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which challenges petitioner's 2010 conviction for assault with a firearm and related offenses. ECF No. 1. Respondent has answered, ECF No.14, and the time to file a reply has expired. Both parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 9.

BACKGROUND

I. Proceedings In the Trial Court

A. Preliminary Proceedings

On March 17, 2009, petitioner was arrested for the March 2, 2009 assault of Wilson Rodriguz in the Meadowview area of Sacramento.

By amended information filed September 10, 2009, petitioner was charged in Sacramento County Superior Court as follows: Count One, second degree robbery in violation of Cal. Penal

1

Code § 211; Count Two, assault with a firearm in violation of Cal. Penal Code § 245(a)(2); and Count Three, criminal threats in violation of Cal. Penal Code § 422. As to Counts One and Two, the amended information alleged that petitioner had personally used a firearm in commission of the offenses. Petitioner was also charged with a prior prison commitment offense. CT 124-127.

Petitioner's co-defendant, Manuel Guerrero, was charged with the same offenses in Counts One and Two, but was not charged with criminal threats in Count Three. Guerrero alone was charged in Count Four with being an accessory after the fact to the robbery. The information alleged as to Count One that Guerrero was an armed principal, and as to Count Two that he personally used a firearm. Id. Prior to trial, and pursuant to a plea agreement, Guerrero pled guilty to (1) being an accessory after the fact to the robbery and (2) assault with a firearm, in exchange for a one-year jail sentence.[1] Lodged Doc. 3 at 13, n.6.

Shortly before Guerrero's change of plea, petitioner moved to dismiss the charges against him in light of his co-defendant's pending plea offer. Petitioner contended that the plea would render Guerrero unavailable to testify, and that Guerrero was a necessary witness for petitioner's defense. Petitioner pointed to a statement Guerrero had made to an arresting officer that a gun was not involved in the incident. In the alternative to dismissal, petitioner sought a continuance of his trial until after expiration of Guerrero's time to appeal. The prosecutor opposed the defense motion, and moved to exclude evidence of Guerrero's out of court statement. On September 10, 2009, the superior court denied the defense motion to dismiss, granted the prosecution motion to exclude, and accepted Guerrero's plea.[2] Petitioner's trial was continued until shortly after the date set for Guerrero's sentencing.

Trial began on October 26, 2009. At hearing on motions in limine, the trial judge reheard argument on the admissibility of Guerrero's out of court statement. Outside the presence of the jury, Guerrero was sworn and exercised his right against self-incrimination. The defense argued that portions of Guerrero's out of court statement should be admitted as declarations against penal

---

[1] This sentence was imposed concurrently to the one-year sentence imposed in an unrelated vehicular manslaughter case. Lodged Doc. 3 at 13, n.6.

[2] These events are described in greater detail below, in relation to petitioner's second claim for relief.

2

interest. The court ruled that the statements were not admissible.[3]

  B. The Evidence Presented At Trial

    1. Prosecution Case

The prosecution case rested primarily on the testimony of victim Wilson Rodriquz, who testified as follows:

On March 2, 2009, Rodriguz was walking alone down a street toward his mother's house in the Meadowview area of Sacramento when he noticed a black Chevrolet Malibu driving toward him. The car had silver and black tinted windows and red rims. The car slowed down and passed Rodriguz. Rodriguz saw two individuals in the car, a driver and a passenger in the front. Although he had seen the car in the neighborhood prior to March 2, 2009, Rodriguz did not recognize either the driver or the passenger.

The Malibu made a U-turn and stopped next to Rodriguz, who ran up to the front door of a green house to seek help. Rodriguz knocked on the front door but no one answered. Petitioner got out of the front passenger seat of the Malibu and walked to the middle of the driveway, pointing something with his hand inside his coat pocket. The driver stayed in the car. Petitioner wore a red peacoat and a red baseball cap that was turned sideways.

Petitioner told Rodriguz "to come over here." Pointing the hand in his jacket pocket at Rodriguz and threatening to shoot him, petitioner ordered Rodriguz to go to the other side of the green house. Petitioner said something like, "I can taste you in my mouth" and "get on the other side before I shoot you." Rodriguz complied and moved to the other side of the garage. Petitioner followed, keeping his hand inside his jacket pocket and pointing what Rodriguz believed was the barrel of a gun at him.

Rodriguz testified that petitioner threatened him with a gun, but provided contradictory testimony about how long the gun was out of petitioner's jacket pocket. Specifically, Rodriguz first testified on direct examination that petitioner pointed a gun straight at him and threatened to kill him while he was ordering Rodriguz to take off different articles of clothing. According to

---

[3] See discussion below regarding Claim Two.

1  Rodriguz, petitioner pulled the gun out of his pocket quickly, pointed the gun at him, and ordered
2  him to take his clothes off.  On cross-examination, however, Rodriguz testified that while he was
3  taking off his clothes, petitioner kept his hand inside his jacket pocket.  Rodriguz testified on
4  recross-examination that the only time he saw the gun was when petitioner hit Rodriguz on the
5  side of the head with it.  Rodriguz stated during recross-examination that after petitioner hit him
6  on the side of the head, petitioner put the gun back in his pocket.

7  Rodriguz was sure that he saw a real gun, not just a piece of metal and not a toy gun.  At
8  one point, Rodriguz testified that the gun was made out of clay, but immediately stated, "[o]f
9  course [the gun] was real."  Rodriguz explained on redirect examination that his statement about a
10 clay gun was the product of frustration.  He testified that the gun was black and it was the same
11 type of gun the police carry.  He further testified that the gun with which he was struck was metal.

12 Petitioner said, "[S]hut up; take your clothes off now before I kill you; I can taste you in
13 my mouth."  Rodriguz took off all of his clothes except for his tank top and socks, emptied his
14 pockets, and placed his belongings on the ground in front of defendant.  Petitioner hit Rodriguz
15 behind the left ear with the gun, causing a cut and bleeding.  The impact of the gun made
16 Rodriguz woozy.  After striking Rodriguz, petitioner said, "[Y]ou don't know how badly I can
17 kill you right now."  Rodriguz feared for his life throughout the encounter.

18 Petitioner took Rodriguz's belongings – including an MP3 player, wallet, cell phone and
19 necklace – and threw them into the waiting Malibu.  Petitioner then got into the passenger seat,
20 and the car made a U-turn and drove away.  Rodriguz saw large red rubber testicles hanging from
21 the back bumper of the car as it drove away.  The driver never got out of the car.

22 Rodriguz ran back to the green house and knocked on the door seeking help.  A woman
23 answered the door, then shut it in his face.  Rodriguz then went to his mother's house, where he
24 called 911 and reported that two 25 to 30 year old Hispanic males in a black Malibu took his ID,
25 credit card, boxers, pants, shoes, and phone.  Rodriguz reported that a man wearing a red jacket
26 and a red hat and who had long hair, a mustache, and "chin hair" hit Rodriguz behind the ear with
27 a gun.  Rodriguz said the man said something to him like, "You don't know how badly I want to
28 kill you right now."

Sacramento Police Officers Trujillo and Griffin responded to the call and determined where the robbery had occurred. Trujillo testified that Rodriguz reported that his assailant had pulled out a gun and pointed it at him. Trujillo observed that Rodriguz was crying and shaking, and saw that his left ear was red and swollen. Rodriquz had a half-inch cut behind his left ear and four to five other lacerations on his ear, and was bleeding. Rodriguz described the car to the officers as a black Chevrolet Malibu with silver tinting on the windows, red on the wheels, and red rubber testicles hanging from the back of the car. He said that he thought the driver of the car lived on Meadowview Road and Amherst. The officers drove Rodriguz around in an unsuccessful attempt to locate the car.

Later the same day, Rodriguz called 911 again to report that he had seen the car parked in front of an apartment complex on Amherst. Rodriguz provided a description of the car and its license plate number. Sacramento Police Nollette responded, went to an apartment complex located on Meadowview Road, and found a car matching the description and license plate number given by Rodriguz. Nollette determined that the car was registered to co-defendant Guerrero. Officers brought Rodriguz to the location where the car was parked, and Rodriguz identified Guerrero's car as the car involved in the robbery.

Further investigation led Nollette to identify petitioner as a suspect.[4] Rodriguz subsequently viewed two photographic line-ups, from which he identified Guerrero as the driver and petitioner as his assailant.

Guerrero's mother, Frances Guerrero, testified that in March 2009, her son owned a 1996 black Chevrolet Impala with red rims, tinted windows and red rubber "balls" hanging from the back of the car. She further testified that on the date of the robbery, her son left their home at 10:30 a.m. in his car, and returned around 1:45 p.m., accompanied by petitioner. Frances Guerrero testified that petitioner was wearing a red jacket and blue pants, and sported a goatee and mustache. She testified that she did not see any guns.

////

---

[4] The jury was not informed how Nollette came to this conclusion, but the in limine motions suggest that Guerrero implicated petitioner.

5

2. Defense Case

The defense called a single witness, Fumi McGee, the resident of the house where Rodriguz had sought help. McGee testified that she had been sitting in her living room when she looked out her front window and saw a young man walking up to her front door. As the young man came closer, McGee saw another man walking on her driveway. The second man said something to the young man, but McGee did not hear what was said. The young man turned around and looked at the second man. McGee went up to her screen door and looked out but did not open the screen door or go outside. She then saw the two men walk toward her garage, out of her view. McGee later saw one of the men walk toward a car. She saw a dark older car with red paint on the back make a U-turn in front of her house. McGee did not see anyone holding a gun. However, she did not look to see if the second man had anything in his hands. After the car left, McGee saw a man walking up to her screen door. This man told McGee, "they stripped me naked, they stripped me naked." McGee responded that she could not help him and the man left. McGee did not call the police.

C. Outcome

The jury found defendant guilty on all counts, and also found true the allegations that he personally used a firearm during the commission of Counts One and Two. See Cal. Penal Code §§ 12022.53, subd. (b), 12022.5, subd. (a). The trial court found the prior prison commitment allegation to be true. See Cal. Penal Code § 667.5, subd. (b). Petitioner was sentenced to a total aggregate term of 16 years in state prison.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on April 26, 2012. Lodged Doc. 3. The California Supreme Court denied review on July 18, 2012. Lodged Doc. 5.

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied without comment or citation on November 1, 2012. Lodged Docs. 6, 7. Petitioner then filed a habeas petition in the California Supreme Court, which was denied without comment or citation on January 23, 2013. Lodged Doc. 8; Suppl. Lodged Doc. (see ECF No. 24).

By operation of the prison mailbox rule, the instant federal petition was filed on September 30, 2013.[5] ECF No. 1. Respondent answered on July 3, 2014. ECF No. 14. Petitioner did not file a reply.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

////

---

[5] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1    issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446,
2    1450 (2013).

3    A state court decision is "contrary to" clearly established federal law if the decision
4    "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529
5    U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state
6    court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to
7    the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court
8    was incorrect in the view of the federal habeas court; the state court decision must be objectively
9    unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

10   Review under § 2254(d) is limited to the record that was before the state court. Cullen v.
11   Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court
12   reasonably applied clearly established federal law to the facts before it. Id. In other words, the
13   focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the
14   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the
15   state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th
16   Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,
17   without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court
18   denies a claim on the merits but without a reasoned opinion, the federal habeas court must
19   determine what arguments or theories may have supported the state court's decision, and subject
20   those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

DISCUSSION

I.   Claim One: Ineffective Assistance of Trial Counsel

A. Petitioner's Allegations and Pertinent State Court Record

24   Petitioner alleges in general terms that defense counsel failed to investigate the case,
25   interview prosecution witnesses prior to trial, or interview any potential defense witnesses. More
26   specifically, petitioner alleges that counsel unreasonably failed to (1) investigate the nature and
27   extent of the victim's head wound, in order to develop evidence that the injury had not been
28   caused by a gun and the assault was therefore a simple assault rather than an assault with a

8

1  firearm; and (2) failed to investigate or present expert testimony demonstrating the victim's lack
2  of competency.

3        The trial record reflects that mid-way through his cross-examination of victim Wilson
4  Rodriguz, defense counsel learned for the first time that Rodriguz received Social Security
5  disability benefits. RT 292-93.[6] Out of the presence of the jury, counsel raised the possibility
6  that Rodriguz was not mentally competent. RT 288. Counsel stated that although the nature of
7  his disability was unknown, Rodriguz's mother "says he was diagnosed" and had been a special
8  education student. RT 289. Counsel also expressed his concerns about Rodriguz's ability to
9  communicate. RT 299. Counsel acknowledged that he'd had concerns about Rodriguz's
10 competency since the preliminary hearing, although counsel had not expressed those concerns to
11 the court at the time. RT 323.

12       Petitioner subsequently filed a motion challenging Rodriguz's competency to testify. CT
13 164-167. Defense counsel unsuccessfully sought a continuance of at least 30 days to seek
14 Rodriguz's medical records and investigate the matte. RT 328-30, 336-38, 345. Following a
15 hearing pursuant to Cal. Evid. Code § 402, during which Rodriguz testified that he had some
16 memory problems and had been in special education as a child because he couldn't read, the trial
17 court ruled that Rodriguz was competent to testify. RT 349-68. The court found that Rodriguz
18 "perceives and recollects appropriately," and that defense counsel could cross-examine regarding
19 the accuracy of his recollection of the assault. RT 368. Petitioner did not challenge that ruling on
20 appeal or in state habeas.

21       B.  <u>The Clearly Established Federal Law</u>

22       The Sixth Amendment guarantees to criminal defendants the right to the effective
23 assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To establish that this right
24 has been violated, a defendant must show that (1) his counsel's performance was deficient and
25 that (2) the "deficient performance prejudiced the defense." <u>Id.</u> at 687. Counsel is
26 constitutionally deficient if his or her representation "fell below an objective standard of

27
28   [6] Rodriguz had disclosed this information to the prosecutor's investigator for the first time on the morning of what was supposed to be his second day on the stand. RT 293, 295.

reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 688 (internal quotation marks omitted). Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

### C. Exhaustion Status of Claim

The ineffective assistance of counsel claim that petitioner presented in his habeas petition to the California Supreme Court, Lodged Doc. 8 (Ground Two), generally challenged counsel's preparation of the case and included the specific allegation that counsel failed to investigate and develop medical evidence that Rodriguz's injury was not caused by a gun. The state petition did not, however, include the allegation that counsel performed unreasonably in failing to conduct pretrial investigation into Rodriguz's competence. Respondent accordingly contends that the claim presented in this court is unexhausted, but urges the court to deny it summarily on the merits rather than as unexhausted. ECF No. 14 at 16-17.

The exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal habeas court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). Exhaustion is a matter of comity and does not affect this court's jurisdiction to entertain petitioner's habeas corpus application. See Harris v. Superior Court, 500 F.2d 1124, 1126-27 (9th Cir. 1974) (en banc).

District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural defense, where the underlying claims are "clearly not meritorious." Lambrix

1   v. Singletary, 520 U.S. 518, 525 (1997); see also Granberry v. Greer, 481 U.S. 129, 135 (1987)
2   (discussing ability of district court to bypass exhaustion determination where the petitioner does
3   not raise a colorable federal claim).  Where a federal petition presents other grounds for denial,
4   requiring state court exhaustion does not serve the underlying purpose of comity.  See Rose v.
5   Lundy, 455 U.S. 509, 525 (1982) (Blackman, J., concurring).  Because the court finds that
6   petitioner's ineffective assistance of counsel claim is subject to denial on the merits, analysis of
7   the exhaustion issue is unnecessary and will be bypassed.

   D.   The Claim Is Inadequate To Support Relief Under Any Standard Of Review

9   Petitioner's conclusory allegations that his lawyer failed to investigate the case and failed
10  to properly prepare for trial are insufficient to state a claim.  See James v. Borg, 24 F.3d 20, 26
11  (9th Cir. 1994) ("Conclusory allegations of ineffective assistance which are unsupported by a
12  statement of specific facts do not warrant habeas relief.")

13  As to the specific allegations that counsel should have developed medical evidence that
14  the victim's injury was caused by a fist rather than a gun, and investigated the victim's mental
15  competence earlier in the case, the claim fails for lack of facts demonstrating prejudice.
16  Petitioner makes no showing of the medical evidence that would have been discovered regarding
17  the victim's wound, or what additional evidence of the victim's incompetence to testify would
18  have been discovered by earlier inquiry.  Without such a showing, petitioner cannot establish
19  prejudice from the alleged attorney errors as Strickland requires.  See Hendricks v. Calderon, 70
20  F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of
21  these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland
22  test.").

23  If petitioner's Strickland claim is considered under § 2254(d), at least to the extent that the
24  claim was presented to and rejected by the California Supreme Court, its rejection was not
25  objectively unreasonable.  "The standards created by Strickland and § 2254(d) are both 'highly
26  deferential,' and when the two apply in tandem, review is 'doubly' so."  Harrington v. Richter,
27  562 U.S. 86, 105 (2011) (citations omitted).  Petitioner has presented no facts that overcome the
28  general presumption that counsel acted within the wide range of reasonable professional

1  assistance. See Strickland, 466 U.S. at 689.  Accordingly, rejection of the claim cannot have

2  constituted an unreasonable application of Strickland.  Moreover, in the absence of a colorable

3  showing of prejudice, the California Supreme Court was not only entitled but compelled to deny

4  relief.  See Strickland, 466 U.S. at 697.  Accordingly, § 2254(d) bars relief to the extent it applies.

5       Petitioner fares no better if his Strickland claim is reviewed de novo, without

6  consideration of § 2254(d)'s limitations on relief.  The absence of a prejudice showing is fatal to

7  the claim.  See Hendricks, 70 F.3d at 1042; see also Grisby v. Blodgett, 130 F.3d 365, 373 (9th

8  Cir. 1997) (finding speculation regarding results of additional investigation insufficient to

9  establish prejudice).  Accordingly, under any standard of review, petitioner has failed to establish

10  ineffective assistance of counsel and is not entitled to relief on that ground.

11     II.    Claim Two: Exclusion of Co-Defendant's Statement

12        A.  Petitioner's Allegations and Pertinent State Court Record

13       Petitioner alleges that his due process right to present a defense was infringed by the

14  exclusion of co-defendant Guerrero's out of court statement, which supported the theory that

15  petitioner did not use a gun.

16       The trial record reflects the following:

17       On September 1, 2009, petitioner moved to dismiss based on a plea bargain that was under

18  consideration for co-defendant Guerrero.  CT 98-101.  Defendant argued that the plea deal would

19  make Guerrero unavailable as a witness, and that his testimony was necessary to establish that the

20  assault on Rodriguz had not involved a gun.  Id.  Guerrero had told an arresting officer,

21  apparently in response to being informed that he was a suspect in an armed robbery, that no gun

22  was involved.[7]  RT 32.  In the alternative, the defense sought a 90 day continuance so that

23  Guerrero could be subpoenaed after his time to appeal had expired.  RT 63.  The motion was

24  heard on September 10, 2009, and the judge ruled that Guerrero's statement to police was not

25  admissible at petitioner's trial under Cal. Evid. Code § 1230.  RT 1-25, 31-47.  Guerrero entered a

---

[7] Although the record includes much discussion of Guerrero's statement, and the trial court reviewed the report of the arresting officer describing the statement, that report was not made part of the record and is not before this court.

12

guilty plea later the same day, and the judge thereafter denied petitioner's motion to dismiss but granted a brief continuance. RT 50-78.

On October 27 and 29, 2009, at hearing on motions in limine, the trial judge considered Guerrero's unavailability to testify and revisited the admissibility of his out of court statement. RT 126-159, 169-172, 205-221. Guerrero was examined outside the presence of the jury, and invoked his Fifth Amendment rights. RT 130-136. The judge ruled that the statement to police was inadmissible hearsay, and not admissible as a declaration against penal interest under § 1230. RT 208-209, 213-214. The judge also ruled that the statement was inadmissible pursuant to Cal. Evid Code § 352 because it was not probative and would confuse the jury. RT 220-221.

### B. The Clearly Established Federal Law

The Constitution guarantees to criminal defendants the right to present a defense. Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986). This includes the right to present witnesses and evidence. Chambers, 410 U.S. at 302. "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as evidentiary and procedural rules. United States v. Scheffer, 523 U.S. 303, 308 (1998); see also Chambers, 410 U.S. at 302 (in exercising the right to present a defense, accused must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."). Where constitutional rights directly affecting the ascertainment of guilt are implicated, however, evidentiary rules including the rule against hearsay may not "be applied mechanistically to defeat the ends of justice." Chambers, 410 U.S. at 302. The exclusion of evidence pursuant to state rules of evidence does not abridge an accused's right to present a defense unless the rule is "arbitrary" or "disproportionate to the purposes they are designed to serve." Scheffer, 523 U.S. at 308 (citations omitted).

### C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker,

501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

After lengthy discussion of the evidentiary issues presented by petitioner, and affirmance of the ruling that Guerrero's statement was inadmissible under the California Evidence Code, the Court of Appeal ruled as follows on the federal dimension of petitioner's claim:

> **B.  Due Process Contention**
>
> Relying on *Chambers v. Mississippi* (1973) 410 U.S. 284 [35 L.Ed.2d 297] (Chambers), defendant contends on appeal that the exclusion of Guerrero's statement to the police violated his federal due process right. The Attorney General contends defendant forfeited this theory by not raising it in the trial court. Assuming, without deciding, that defendant preserved his constitutional claim, we reject it on the merits.
>
> Chambers involved unique facts not presented here. Charged with the murder of a police officer, the defendant asserted a third party culpability defense. He contended one McDonald committed the murder. McDonald told three acquaintances on separate occasions he had committed the murder. He was not a suspect at the time. McDonald later signed a confession to the crime. (*Chambers, supra*, 410 U.S. at pp. 287, 289, 292-293.) Called as a witness, McDonald repudiated his confession and denied he was the killer. (*Id.* at p. 288.) Mississippi evidentiary law precluded a party from impeaching his or her own witness, and Mississippi did not recognize declarations against penal interest as an exception to its hearsay rule. (*Id.* at pp. 295, 299.) The high court reasoned there was considerable evidence that McDonald's statements were reliable. (*Id.* at p. 300.) The statements were made spontaneously to friends shortly after the crime and corroborated by other evidence. (*Id.* at pp. 300-301.) The statements were "in a very real sense self-incriminatory and unquestionably against [McDonald's] interest. [Citations.] McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution." (*Id.* at p. 301.) The high court held that, in the circumstances of the case, the combined effect of the state's evidentiary rules precluding impeaching a party's own witness and precluding admission of hearsay declarations against penal interest operated to foreclose presentation of reliable and potentially exculpatory evidence crucial to the defense and thus deprived the defendant of due process. (*Id.* at pp. 302-303.)
>
> In *Lawley*, our Supreme Court concluded that Chambers was inapplicable and stated, "the court [in Chambers] made clear that in reaching its judgment it established no. new principles of constitutional law, nor did its holding '"signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures."' [Citations.] The general rule remains that '"the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain . . . a

14

> traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice.'" (*Lawley, supra*, 27 Cal.4th at pp. 154-155.)
>
> *Dixon* found *Chambers* inapplicable as well. In addition to the distinguishing facts establishing the reliability of the declarant's statements in *Chambers*, *Dixon* noted that *Chambers* applies only to declarant statements that equate to "'I did it,'" and not to statements that amount to "'[The defendant] didn't do it.'" (*Dixon, supra*, 153 Cal.App.4th at pp. 999-1000.) *Dixon* further held there is no constitutional error where the trial court properly excludes unreliable evidence under section 1230. (*Dixon, supra*, 153 Cal.App.4th at p. 1000.)
>
> Unlike *Chambers*, the statements here were not made under circumstances bearing indicia of reliability. As stated in *Butler*, "'[t]he same lack of reliability that makes... statements excludable under state law makes them excludable under the federal Constitution.'" (*Butler, supra*, 46 Cal.4th at p. 867.) Moreover, the statements that were excluded here did not amount to "I did it." They described conduct solely attributed to defendant. *Chambers* has no application here. Defendant was not deprived of due process.

Lodged Doc. 3 at 36-38

### D. Objective Reasonableness Under § 2254(d)

The state court's disposition of the hearsay issue is not subject to review in this court. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (errors of state law do not support federal habeas relief); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

On the due process question, the state court's application of Chambers was not objectively unreasonable. Quite to the contrary, the state court's discussion of Chambers is perfectly accurate, and amply justifies the conclusion that Chambers does not support petitioner's due process claim. In this case, Guerrero denied that a gun had been involved when confronted with a police officer's accusation of involvement in an armed robbery. This is a self-exculpatory, and thus not particularly reliable, hearsay statement, far outside the scope of Chambers. The hearsay rules and § 352 balancing test that were applied by the trial court and affirmed by the court of appeal were neither inherently standardless nor arbitrarily applied. Petitioner does not cite, and

15

the court's research has failed to identify, any U.S. Supreme Court precedent compelling (or even strongly supporting) the conclusion that exclusion of a non-testifying co-defendant's self-exculpatory out-of-court statement violates a defendant's due process right to present a defense. Accordingly, § 2254(d) bars relief.

### III.   Claim Three: Failure To Instruct Jury On Lesser Included Offense

#### A.   Petitioner's Allegations

Petitioner alleges that his due process rights were violated by the trial court's failure to instruct the jury, sua sponte, regarding the lesser included offense of simple assault. The jury was instructed on the elements of the charged offense, assault with a firearm. Petitioner contends that the conflicting evidence regarding the presence of a gun required the court to also instruct on simple assault.

#### B.   The Clearly Established Federal Law

There is no clearly established federal law requiring that a state trial court instruct a jury on a lesser included offense in a non-capital case. It is clearly established that a defendant in a capital case has a constitutional right to a jury instruction on a lesser included offense if there is evidence to support the instruction. Beck v. Alabama, 447 U.S. 625 (1980). The Supreme Court, however, has expressly declined to decide whether this right extends to defendants charged with non-capital offenses. Id. at 638 n.14. Since Beck, the Supreme Court has not addressed the question, and the Ninth Circuit has held that "the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam).[8]

---

[8] Prior to the passage of the AEDPA, the Ninth Circuit left open the possibility of relief when a state court denies a lesser included offense instruction that clearly constitutes a theory of the defense. In Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984), the Ninth Circuit stated that a trial court's refusal to instruct the jury on a lesser included offense might interfere with due process rights when "the criminal defendant is...entitled to adequate instructions on his or her theory of defense." Id. However, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'... [and] therefore cannot form the basis for habeas relief under AEDPA." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012).

16

Errors in instructing the jury can support federal habeas relief only if they "so infect[] the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 71 (1991). Alleged instructional error "must be considered in the context of the instructions as a whole and the trial record." Id. at 72. In challenging the failure to give an instruction, a habeas petitioner faces an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

### C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst, 501 U.S. 797; Ortiz, 704 F.3d at 1034.

The California Court of Appeal ruled as follows:

> Defendant contends that the trial court erred by failing to instruct the jury sua sponte on simple assault as a lesser included offense to the offense charged in count two, assault with a firearm. Simple assault is a lesser included offense of assault with a firearm. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.) Defendant contends that there was substantial evidence that he was guilty of simple assault because the evidence concerning the use of a gun was conflicting.
>
> "[E]ven absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] "'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]'" [Citation.] '[T]he existence of "any evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.]' [Citation.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 623, quoting *People v. Breverman* (1998) 19 Cal.4th 142, 154, 162 (Breverman), italics omitted.) "'Speculation is insufficient to require the giving of an instruction on a lesser included offense.'" (*People v. Redd* (2010) 48 Cal.4th 691, 732.)
>
> We review de novo the question of whether the trial court erroneously failed to instruct on a lesser included offense. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

17

In support of his contention, defendant cites the following: (1) a firearm was not recovered, (2) McGee testified that she did not see a gun, and (3) Rodriguz's testimony was inconsistent.

As we have noted, the parties stipulated that defendant was arrested over two weeks after the robbery. Under these circumstances, evidence that a gun was not recovered does not justify instructions on a lesser included offense.

Although McGee testified that she did not see anyone holding a gun, McGee also testified that she did not look to see if defendant had anything in his hand, she was not watching defendant and Rodriguz continuously, and she could not see defendant and Rodriguz from her vantage point after they moved toward her garage. Rodriguz testified that defendant pulled out a gun after Rodriguz and defendant moved to the side of McGee's house. Based on that evidence, McGee could not have seen whether defendant used a gun to rob and assault Rodriguz. McGee's testimony did not support instructions on simple assault.

Rodriguz testified that he saw a gun and that he had no doubt that the gun defendant used was real. Defendant told Rodriguz he would shoot Rodriguz if Rodriguz did not move to the side of McGee's house. He also threatened to kill Rodriguz. Rodriguz was in fear of his life and complied with defendant's demands. The evidence suggests Rodriguz's fear was reasonable and his compliance was prudent given the gun defendant brandished and defendant's verbal threats. There is no evidence of some other force or fear mechanism that would have motivated Rodriguz to remove his clothes and give up his property. Rodriguz testified he was struck with the gun; he also testified that the gun with which he was struck was metal. The impact, at least temporarily, made Rodriguz woozy and affected his hearing. At no time did Rodriguz testify he was hit with a fist or punched, nor did anything he said during his testimony suggest he may have been punched instead of struck with a gun. Not long after the robbery, Rodriguz told the 911 operator that defendant had used a gun. Shortly after calling 911, Rodriguz told a police officer defendant had used a gun.

In light of the evidence, any notion that defendant did not use a gun to rob and assault Rodriguz, but rather merely struck Rodriguz with his fist or some other object is speculative at best. Certainly, there was no evidence substantial enough to merit the jury's consideration of simple assault as a lesser included offense. "The existence of "any evidence, no matter how weak" will not justify a lesser included offense." (*Braverman, supra*, 19 Cal.4th at p. 162, italics omitted.) We find no instructional error.

In any event, even if the trial court had erred, any such error was harmless. It is well settled that "[e]rror in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Beames* (2007) 40 Cal.4th 907, 928 [failure to give second degree murder or involuntary manslaughter instructions was

18

> harmless because jury necessarily determined killing was intentional when it found the torture-murder special circumstance allegation true]; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 17-19 [failure to give involuntary manslaughter instruction was harmless because jury necessarily found by its first degree murder verdict that the killing was intentional when it found the killing to be willful, deliberate and premeditated]; *People v. Polley* (1983)147 Cal.App.3d 1088 [failure to give involuntary manslaughter instruction based upon evidence the defendant killed his wife accidentally while trying to commit suicide himself was harmless because the jury's verdict of first degree murder necessarily resolved the issue of express malice, i.e., intent to kill]; see also *People v. Lewis* (2001) 25 Cal.4th 610, 647; *People v. Prettyman* (1996) 14 Cal.4th 248, 276.)
>
> Here, the jury affirmatively found that defendant personally used a firearm during his offenses when it found the personal use of a firearm allegation true, thus negating the probability that it would have found defendant guilty of simple assault instead of assault with a firearm had the jury been instructed on the lesser included offense. For this reason and because we find that the evidence supported the jury's finding that defendant used a gun when he robbed and assaulted Rodriguz, any error in not instructing the jury on a lesser included offense was harmless.

Lodged Doc. 3 at 39-43.

### D. Objective Unreasonableness Under § 2254(d)

The California Court of Appeal decided this issue on state law grounds, without discussion of the federal due process dimension of the claim. The state court is presumed to have decided the federal question adversely to petitioner, and that conclusion is subject to reasonableness review under § 2254(d). Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). Because no clearly established principle of federal constitutional law requires trial courts to give lesser included offense instructions even if they are appropriate under state law, relief in this court is barred by § 2254(d). Solis, 219 F.3d at 929.

## IV.     Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in this order, a substantial showing of the denial of a constitutional right has not been made in this case.

Therefore, no certificate of appealability should issue.

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is DENIED;

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

DATED: January 4, 2017

*Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE